RECEIVED
USDC WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 2 / 1 / 12
      JOB

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CALVIN JAMES,<br>         Plaintiff | CIVIL ACTION<br>SECTION "P"<br>1:10-CV-01706 |
| VERSUS | |
| CURTIS MASON, et al.,<br>         Defendants | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |


REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE


Before this court is a complaint filed pursuant to Bivens v.

Six Unknown Named Agents of the Federal Bureau of Narcotics, 403

U.S. 388, 91 S.Ct. 1999 (1971)[1] and the Federal Tort Claims Act

("FTCA"), 28 U.S.C. §§ 2671-2680, on November 2, 2010 and amended

on January 19, 2011 (Doc. 4) by plaintiff Calvin James ("James").

The sole remaining defendants are Curtis Mason in his individual

capacity ("Mason")(a corrections officer employed at the United

States Penitentiary in Pollock, Louisiana ("USP-Pollock")) and the

United States of America.   James contends that, while he was

---

[1] Bivens defendants are federal officials brought into
federal court for violating the Federal Constitution. Bivens-
type actions may be brought only against federal agents and not
federal agencies. F.D.I.C. v. Meyer, 510 U.S. 471, 486, 114
S.Ct. 996, 1006 (1994); Whitley v. Hunt, 158 F.3d 882 885 (5th
Cir. 1998). Under Bivens, a plaintiff may recover damages for
any injuries suffered as a result of federal agents' violations
of his constitutional rights. Channer v. Hall, 112 F.3d 214, 216
(5th Cir. 1997).

incarcerated in USP-Pollock in 2010, Officer Mason intentionally activated a sliding steel gate to close on James, pinning him between the gate and the gate post.  Mason did not open the gate until ordered to by Warden Keffer.  James further alleges that the United States through the Bureau of Prisons has failed to implement policies or practices to officers from closing the gates on inmates, despite the fact that it has happened numerous times in the past.  James alleges exhaustion of his administrative remedies for both causes of action (Docs. 1, 4).

Mason answered the complaint (Doc. 20) and filed a motion for summary judgment (Doc. 41).  The United States did not answer the complaint, but filed a motion to dismiss alleging lack of subject matter jurisdiction (Doc. 41).  James did not file a response to defendants' motions.  Defendants' motions (Doc. 41) are now before the court for disposition.

Law and Analysis

Motion to Dismiss

The United States filed a motion to dismiss James' FTCA action, contending this court lacks subject matter jurisdiction to consider James' claims under the intentional tort exception to liability.

In examining a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the district court is empowered to consider matters of fact which may be in dispute.  A 12(b)(1)

motion should be granted only if it appears that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief.

The United States is a sovereign, and, as such, is immune from suit unless it has expressly waived such immunity and consented to be sued. Hebert v. United States, 438 F.3d 483, 487 (5th Cir.2006). Sovereign immunity is jurisdictional in nature. U.S. v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961 (1983). Such immunity protects the United States from liability, and deprives the court of subject-matter jurisdiction over claims against the United States. Hebert, 438 F.3d at 487-488, citing Mitchell, 463 U.S. at 212. Thus, before a court proceeds on a case against the United States, it must first decide whether one of the government's several waivers of sovereign immunity applies. Truman v. U.S., 26 F.3d 592, 594 (5th Cir. 1994).

There are exceptions to the waiver of sovereign immunity in the FTCA. See 28 U.S.C. § 2680(a)-(n). The exceptions to the to the FTCA's waiver of sovereign immunity that appear in Section 2680 limit the federal court's jurisdiction to hear FTCA claims and, if applicable, bar a suit brought against the government. One of the exceptions to the FTCA's general consent-to-be-sued policy retains the government's sovereign immunity for "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation,

deceit, or interference with contract rights." 28 U.S.C. §2680(h); Truman, 26 F.3d at 594. To determine whether a claim is one arising out of any of these enumerated torts, the court focuses on the conduct upon which the plaintiff's claim is based. If the conduct upon which a claim is based constitutes a claim arising out of any one of the torts listed in Section 2680(h), then the federal courts have no jurisdiction to hear that claim. Truman, 26 F.3d at 594, and cases cited therein. Even if a plaintiff styles a claim so that it is not one that is enumerated in Section 2680(h), the plaintiff's claim is still barred when the underlying governmental conduct essential to the plaintiff's claim can fairly be read to arise out of conduct that would establish an excepted cause of action. In other words, the FTCA bars a claim based on conduct that constitutes a tort listed in Section 2680(h) even though that conduct may also constitute another tort not listed in Section 2680(h). Truman, 26 F.3d at 594, and cases cited therein. Similarly, a plaintiff cannot circumvent the purpose of Section 2680(h) by framing his complaint in terms of the government's negligent failure to prevent the excepted harm. Truman, 26 F.3d at 594-595.

The intent of the FTCA is that the United States would not be financially responsible for the assaults and batteries committed by its employees. The reach of Section 2680(h) cannot be avoided by framing a complaint in terms of negligent failure to prevent the

4

assault and battery. U.S. v. Shearer, 473 U.S. 52, 55, 105 S.Ct. 3039, 3042 (1985); Garcia v. U.S., 776 F.3d 116 (5th Cir. 1985). The phrase "arising out of assault [or] battery" is broad enough to encompass claims sounding in negligence. The Government is not liable for an assault and battery by a government employee where the negligence claim turns on the inadequacy of supervision or warnings. Shearer, 471 U.S. at 56-57, 105 S.Ct. at 3042.

Of course, there is an exception to the exception. The intentional tort exception to the waiver of sovereign immunity set forth in 28 U.S.C. § 2680(h) is limited by the "law enforcement proviso," which relinquishes sovereign immunity against claims arising out of torts enumerated in Section 2680(h) (including assault and battery) if the claim resulted from the act or omission of a federal *investigative or law enforcement* officer. See Sutton v. U.S., 819 F.2d 1289 (5th Cir. 1987). BOP employees are considered law enforcement officers for purposes of Section 2680(h) *if* they are acting within the scope of law enforcement functions (as opposed to security functions) at the time the tort is committed. Castro, 560 F.3d at 387.

James contends that Officer Mason intentionally activated a sliding steel gate to close on James, pinning him between the gate and the gate post, and did not open the gate until ordered to by Warden Keffer. James further alleges that the United States through the Bureau of Prisons failed to implement policies or

5

procedures to prevent officers from closing the gates on inmates.[2]

James alleges that Calvin intentionally shut the gate on him and thus assaulted him with the gate. At the time, Calvin was working as a tower guard and was in charge of opening and closing the security gate. Therefore, Calvin was clearly working in a security capacity and not in a law enforcement capacity.

Since James alleges Calvin intentionally assaulted him and Calvin was working in a security capacity at the time of the incident, the United States has not waived its sovereign immunity and this court lacks subject matter jurisdiction. Although James alleges the United States failed to prevent the harm, as stated above, a plaintiff cannot circumvent the United State's immunity in his case by framing his complaint in terms of the government's negligent failure to prevent the assault.

Since the United States is immune from James' suit, this court lacks subject matter jurisdiction over James' claim against the United States. Defendants' motion to dismiss should be granted and James' action against the United States should be dismissed.

Motion for Summary Judgment

Calvin filed a motion for summary judgment alleging James' excessive force claim should also be dismissed.

James alleges that Calvin intentionally closed the automatic

---

[2] Although James alleges the automatic gates have been closed on inmates by prison guards numerous times in the past, he does not cite any other instances.

gate on him in order to prevent him from passing through it.  To prevail on an Eighth Amendment excessive force claim, a plaintiff must establish that force was not applied in a good faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm, and that he suffered an injury.  Eason v. Holt, 73 F.3d 600, 602 (5th Cir. 1996).

In determining the subjective intent of the officer, the trier of fact must base its determination on relevant subjective factors suggestive of intent.  Some of the pertinent factors are the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response.  Bender v. Brumley, 1 F.3d 271, 278 (5th Cir. 1993), quoting Hudson v. McMillian, 962 F.2d 522, 523 (5th Cir. 1992).  A convict, or a pretrial detainee, need not demonstrate significant injury where the force used was malicious and wanton.  The core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.  Bender, 1 F.3d at 278, n. 6, quoting Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992).

The law of the Fifth Circuit is that to support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than de minimis physical injury, but

7

there is no categorical requirement that the physical injury be significant, serious, or more than minor. Gomez v. Chandler, 163 F.3d 921, 924 (5th Cir. 1999). However, the Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. The absence of serious injury, while relevant to the inquiry, does not preclude relief. Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997). Also, Wilkins v. Gaddy, 130 S.Ct. 1175, 1178-1179 (U.S. 2010).

In the case at bar, James alleges in his complaints that, when he tried to follow a prison employee through an automatic gate, Officer Mason closed the gate on him and "impaled" him with the gate.

Defendants argue the gate was opened for an employee, as alleged by James, but that James attempted to rush through the gate behind her, as the gate was closing, and was accidentally pinned in the gate. Defendants contend that James' claim must fail because he did not sustain an injury; the gate immediately stopped closing when it came into contact with James.

Defendants submitted James' medical records which show that, on the date of the incident (May 1, 2010), after it occurred, James went to the infirmary and stated he did not have any pain but just wanted to make a record of the incident (Doc. 41, Ex. 5, p. 4/41).

8

On May 11, 2010, James reported at the infirmary that his "breast bone" was sore and tender to touch, and that it hurt when he inhaled deeply (Doc. 41, Ex. 5, pp. 6/41-7/41). An examination showed James' chest wall was non-tender on palpation, appeared normal without swelling or bruising, and there was no evidence of internal complications (Doc. 41, Ex. 5, pp. 6/41-7/41). However, the infirmary gave James "MethylPREDNISolone" tablets and Acetaminophen for "contusion of chest wall" (Doc. 41, Ex. 5, p. 8/41). An x-ray of James' chest was ordered on June 8, 2010 (Doc. 41, Ex. 5, p. 7/41). On June 14, 2010, James complained that his "chest bone [wa]s popping" and he still could not take a deep breath, but he did not have marks on his chest or back, his lungs were clear, his heart was beating normally, he was unable to elicit the "popping" sound when examined, and his chest x-rays were negative (Doc. 41, Ex. 5, p. 11-12/41). James was prescribed Meloxicam[3] for "contusion of chest wall" (Doc. 41, Ex. 5, p. 12/41).

Also on June 14, 2010, James reported having paranoid feelings and anxiety, and requested a psychology consult (Doc. 41, Ex. 5, p. 13/41). On July 6, 2010, James reported that "he recently

---

[3] Meloxicam is an anti-inflammatory used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis and rheumatoid arthritis. See MEDLINEplus Drug Information: Meloxicam, *available at* http://www.nlm.nih.gov/medlineplus/druginformation.html (a service of the U.S. National Library of Medicine and the National Institutes of Health).

attempted to dart through the gate on the tower and got caught in the gate for a few seconds," but he was examined and cleared by medical and that was causing him some stress (Doc. 41, Ex. 5, p. 15/41). On July 8, 2010, it was noted that James did not have any pain, but had generalized anxiety (Doc. 41, Ex. 5, pp. 16-17/41).

On July 20, 2010 and August 13, 2010, James was again prescribed Meloxicam for "contusion of chest wall" (Doc. 41, Ex. 5, pp. 20/41, 24/41). On August 30, 2010, James was prescribed Capsaicin cream for "contusion of chest wall" (Doc. 41, Ex 5, p. 26/41). James again complained of pain on October 7, 2010, and he was referred to counseling and x-rays were ordered (Doc. 41, Ex. 5, pp. 28-30/41). Dr. Alexandre examined James on October 20, 2010, found "some discomfort at chondro sternal articulations in the manubrial area," but noted there was no pain on palpation of costochondral junction at 2nd and 3rd rib level (Doc. 41, Ex. 5, p. 35/41). From the x-rays of James' ribs, Dr. Alexandre diagnosed temporary, acute "sprain and strain of ribs," explained the pain was likely a "boney pain" that would eventually go away, and discontinued James' medications (Doc. 41, Ex. 5, pp. 34-35/41).

Dr. Joel Alexandre stated in an affidavit (Doc. 41, Ex. 5, p. 1/41) that there was no objective evidence that James suffered a physical injury from the gate, but he had been prescribed medications anyway for his discomfort (Doc. 41, Ex. 5, pp. 2-3/41).

Defendants also submitted an affidavit from Officer Curt Mason

(Doc. 41, Ex. 6) in which Mason states he partially opened the gate for a staff member to pass through and, after she did, he immediately began to close the gate; while the gate was closing James tried to squeeze through and was trapped in the gate for a moment (Doc. 41, Ex. 6).  Mason further states in his affidavit that he did not intentionally close the gate on James and, when he saw James trapped, he opened the gate again and James walked on through (Doc. 41, Ex. 6).  Mason states that inmates are not supposed to attempt to go through a gate unless it was in an open movement, and that James had not been authorized to go through the gate while it was closing (Doc. 41, Ex. 6).[4]

Accepting Mason's uncontested affidavit as true for purposes of this motion, the incident was accidental and not an intentional act by Mason.  Moreover, it does not appear there was a use of excessive force; prison gates are customarily closed in order to prevent inmates from passing through them.  Therefore, Mason's action in closing the automatic gate after the employee passed through was appropriate.  James simply tried to pass through the gate while is was closing and the gate stopped when it came into contact with him, but James was momentarily trapped in it before Mason opened the gate again.

---

[4]   Gordon Lewis, a special investigative agent employed at USP-Pollock, who describes what he was on a videotape of the incident.  Since the videotape has not been introduced into evidence, Lewis' statement will not be considered.  See F.R.E. rule 1002.

11

Accepting defendants' uncontested submissions as true for purposes of this motion, there are no genuine issues of material fact which would preclude a summary judgment in favor of Mason on the issue of the use of excessive.  Therefore, defendants' motion for summary judgment should be granted and James' action against Mason should be dismissed with prejudice.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that defendants' MOTION TO DISMISS BE GRANTED (Doc. 41) and that James' action against the United States be DENIED AND DISMISSED WITH PREJUDICE for lack of subject matter jurisdiction.

IT IS ALSO RECOMMENDED that defendants' MOTION FOR SUMMARY JUDGMENT BE GRANTED (Doc. 41) and that James' action against Mason be DENIED AND DISMISSED WITH PREJUDICE.

ACCORDINGLY, James' action against all remaining defendants should be dismissed in its entirety with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered

12

by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 31st day of January, 2012.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE